# UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF PENNSYLVANIA

KARIANN BALON,             :
        Plaintiff          :     CIVIL ACTION NO. 3:16-CV-0410
                        :     (Judge Nealon)
        v.                 :
                        :
ENHANCED RECOVERY    :
COMPANY, INC.,          :
        Defendant      :

## MEMORANDUM

Plaintiff, Kariann Balon, filed a complaint against Defendant, Enhanced Recovery Company, Inc., in the Court of Common Pleas of Luzerne County, Pennsylvania, alleging that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). (Doc. 1). On March 8, 2016, Defendant removed the action to this Court. (Id.).

On March 16, 2016, Defendant filed a Rule 12(b)(6) motion to dismiss Plaintiff's complaint. (Doc. 3). On June 2, 2016, Defendant's motion was denied. (Docs. 9, 10). On June 16, 2016, Defendant filed an answer to the complaint. (Doc. 11). On June 29, 2016, Defendant filed an amended answer. (Doc. 15).

On July 25, 2016, Plaintiff filed a motion to strike the second and third affirmative defenses presented in the amended answer. (Doc. 18). On September 15, 2016, Plaintiff's motion to strike was granted. (Doc. 22). On October 6, 2016, Defendant filed a second amended answer. (Doc. 24).

On December 28, 2016, Defendant filed a motion to dismiss the complaint for lack of subject matter jurisdiction and brief in support. (Docs. 27, 28). On that same date, Plaintiff filed a motion for summary judgment, statement of undisputed material facts, and brief in support. (Docs. 29, 30, 31). On January 11, 2017, Plaintiff filed a brief in opposition to Defendant's motion to dismiss. (Doc. 32). Also on January 11, 2017, Plaintiff filed a motion to remand the above-captioned action to state court. (Doc. 33). On January 18, 2017, Defendant filed a brief in opposition to Plaintiff's motion for summary judgment and response to Plaintiff's statement of undisputed material facts. (Docs. 34, 35). On January 25, 2017, Plaintiff filed a brief in support of her motion to remand. (Doc. 36). On that same date, Defendant filed a reply to Plaintiff's brief in opposition to Defendant's motion to dismiss. (Doc. 37). On February 1, 2017, Plaintiff filed a reply to Defendant's brief in opposition to Plaintiff's motion for summary judgment. (Doc. 38). On February 8, 2017, Defendant filed a brief in opposition to Plaintiff's motion to remand. (Doc. 39). On February 20, 2017, Plaintiff filed a reply to Defendant's brief in opposition to Plaintiff's motion to remand. (Doc. 40).

In sum, there are currently three (3) motions pending before the Court, each of which has been fully briefed. See (Docs. 27-32, 34-35, 37-40). As discussed in

more detail below, Defendant's motion to dismiss the complaint for lack of subject matter jurisdiction, (Doc. 27), and Plaintiff's motion to remand, (Doc. 33), will be denied. Plaintiff's motion for summary judgment, (Doc. 29), on the other hand, will be granted.

## I. DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

### A. Factual Allegations

Plaintiff's complaint makes the following allegations: Defendant has attempted to collect a debt from Plaintiff on an "account that was identified by a number ending in 2418." (Doc. 1-1, p. 2). "On or about February 9, 2015, [Defendant] caused to be mailed a letter addressed to Plaintiff." (Id.). "The letter was an attempt to collect on the Account." (Id.). The letter states, in part, that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050 (P) and related federal law." (Id.). "The amount of the alleged debt at the time that the letter was sent was $798.67 . . . . [and] [t]he offer to settle was for $638.94." (Id.). "[T]he amount of savings if the offer was accepted would be $159.73." (Id. at pp. 2-3).

**B.     Standard of Review**

"Federal courts are courts of limited jurisdiction." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377 (1994).  "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." <u>Id.</u> (internal citations omitted).

In this case, Defendant's motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1), which allows for the dismissal of an action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  A Rule 12(b)(1) motion to dismiss can present facial and factual challenges to subject matter jurisdiction. <u>See</u> <u>Hartig Drug Co. v. Senju Pharm. Co.</u>, 836 F.3d 261, 268 (3d Cir. 2016).

When presented with a 12(b)(1) motion, "[a] district court has to first determine . . . whether [that] motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." <u>Constitution Party of Pa. v. Aichele</u>, 757 F.3d 347, 357 (3d Cir. 2014). In particular, "[a] facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" <u>Hartig Drug Co.</u>, 836 F.3d at 268 (quoting <u>Petruska v. Gannon Univ.</u>, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

Where, as here, the moving party brings a factual challenge to subject matter

jurisdiction, it "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." Hartig Drug Co., 836 F.3d at 268 (citing Aichele, 757 F.3d at 358). When presenting a factual challenge:

> "the plaintiff [has] the burden of proof that jurisdiction does in fact exist," the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "no presumptive truthfulness attaches to [the] plaintiff's allegations . . . ."

Id. (alterations in original) (quoting Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977)). "And, when reviewing a factual challenge, 'a court may weigh and consider evidence outside the pleadings.'" Id. (quoting Aichele, 757 F.3d at 358). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review." Id. (citing Davis v. Wells Fargo, 824 F.3d 333, 348-50 (3d Cir. 2016)). Notably, "a Rule 12(b)(1) factual evaluation 'may occur at any stage of the proceedings, from the time the answer has been served until after the trial has been completed.'" Sprague v. Cortes, 2016 U.S. Dist. LEXIS 170463, at *29 (M.D. Pa. Dec. 9, 2016) (Mariani, J.) (quoting Mortensen, 549 F.2d at 891-92). "However, '[a] factual jurisdictional proceeding cannot occur until plaintiff's allegations have been controverted.'" Wayne Land and Mineral Grp., LLC v. Del. River Basin Comm'n,

2017 U.S. Dist. LEXIS 42622, at *24 (M.D. Pa. Mar. 23, 2017) (Mariani, J.)

(quoting <u>Mortensen</u>, 549 F.2d at 892 n.17). Further, "'[t]he party invoking federal

jurisdiction bears the burden of establishing' the elements of standing and 'each

element must be supported in the same way as any other matter on which the

plaintiff bears the burden of proof, i.e., with the manner and degree of evidence

required at the successive stages of the litigation.'" <u>Patel v. Allstate N.J. Ins. Co.</u>,

648 F. App'x 258, 260 (3d Cir. 2016) (quoting <u>Lujan v. Defenders of Wildlife</u>,

504 U.S. 555, 561 (1992)). At the motion to dismiss stage, "general factual

allegations of injury resulting from defendant's conduct may suffice." <u>Lujan</u>, 504

U.S. at 561. However, "'[i]n response to a summary judgment motion . . . the

plaintiff can no longer rest on such "mere allegations," but must "set forth" by

affidavit or other evidence "specific facts," Fed. R. Civ. P. 56(e), which for

purposes of the summary judgment motion will be taken to be true.'" <u>Blunt v.</u>

<u>Lower Merion Sch. Dist.</u>, 767 F.3d 247, 279 (3d Cir. 2014) (quoting <u>Lujan</u>, 504

U.S. at 561).

## C. <u>Discussion</u>

Defendant argues in support of its Rule 12(b)(1) motion to dismiss that the

Court lacks subject matter jurisdiction over Plaintiff's claims because she lacks

standing under Article III of the United States Constitution. (Doc. 28, pp. 10, 14-

22).  Defendant reaches this conclusion, at least in part, as a result of certain responses made by Plaintiff during discovery.  (Doc. 28, pp. 4-6, 20-21); (Doc. 39, pp. 7-8).  According to Defendant, a number of these discovery responses establish that Plaintiff has not suffered a concrete injury, which, as discussed in more detail below, is a requisite to establish Article III standing.  (Id.).  Clearly, since it relies on facts presented outside of the pleadings, Defendant presents a factual attack on the subject matter jurisdiction over Plaintiff's claim.  Hartig Drug Co., 836 F.3d at 268 (citing Aichele, 757 F.3d at 358).

In response, Plaintiff states that it is undisputed "that she has not suffered a concrete injury, and that jurisdiction is therefore not appropriate in federal court.[footnote omitted]."  (Doc. 32, p. 1) (emphasis in original); see (Doc. 28, 10-22); (Doc. 33, p. 1); (Doc. 36, p. 1); (Doc. 37, p. 4).  Rather, "Plaintiff does dispute whether Defendant is entitled to the relief it requests in its motion."  (Doc. 32, p. 1).  According to Plaintiff, Defendant's request for dismissal should be denied "because Plaintiff's claim was initially filed in state court, the proper recourse here is remand rather than dismissal."[1]  (Id.).

Importantly, however, the apparent agreement between the parties

---

[1]  The Court notes that Defendant argues against remand.  (Doc. 39).  However, those arguments need not be addressed because the Court does not reach that portion of the dispute concerning subject-matter jurisdiction.

7

concerning Plaintiff's lack of standing under Article III is not dispositive. Rather, "federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" Hartig Drug Co., 836 F.3d at 267 (quoting Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006); citing Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C., 692 F.3d 283, 300 n.10 (3d Cir. 2012)). "A court's non-waiveable obligation to inquire into its own jurisdiction is most frequently exercised in the negative–that is, by questioning whether federal jurisdiction exists even when all parties assume that it does." Id. "But 'federal courts [also] have a strict duty to exercise the jurisdiction that is conferred upon them by Congress and 'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not.'" Id. (internal citations omitted). "'[S]ubject-matter delineations must be policed by the courts on their own initiative,' irrespective of whether that policing of jurisdictional authority is voiced in the positive or negative." Id. (citing Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). "Thus, regardless of the acquiescence or wishes of the parties, we must question" the jurisdictional issue presented in this case. Id.; see Fuentes v. AR Res., Inc., 2017 U.S. Dist. LEXIS 48923, at *6 (D.N.J. Mar. 31, 2017) ("Although Defendant does not challenge Plaintiff's constitutional standing to sue, this Court

has an independent obligation to confirm the existence of standing before proceeding to an adjudication of Plaintiff's claims.") (citing <u>Ballentine v. United States</u>, 486 F.3d 806, 810 (3d Cir. 2007)).

As discussed above, Defendant's instant motion argues that Plaintiff lacks Article III standing. "There are three well-recognized elements of Article III standing: First, an 'injury in fact,' or an 'invasion of a legally protected interest' that is 'concrete and particularized.'" <u>In re Horizon Healthcare Servs. Data Breach Litig.</u>, 846 F.3d 625, 633 (3d Cir. 2017) (quoting <u>Lujan</u>, 504 U.S. at 560). "Second, a 'causal connection between the injury and the conduct complained of[.]'" <u>Id.</u> (alteration in original) (quoting <u>Lujan</u>, 504 U.S. at 560). "And third, a likelihood 'that the injury will be redressed by a favorable decision.'" <u>Id.</u> (quoting <u>Lujan</u>, 504 U.S. at 561).

Here, as stated, both parties assert that Plaintiff lacks standing under Article III of the United States Constitution because she has not suffered an "injury-in-fact." <u>See</u> (Doc. 28, pp. 14-22); (Doc. 32, p. 1); (Doc.33, p. 1); (Doc. 34, p. 12); (Doc. 36, p. 1); (Doc. 37, pp. 4, 8); (Doc. 38, p. 4). Specifically, Defendant contends that "Plaintiff has not suffered any actual injury," and, thus, "has failed to establish any concrete injury . . . ." (Doc. 28, p. 22). Similarly, Plaintiff "agrees that the Court does not have jurisdiction over this matter because Plaintiff has not

suffered a 'concrete' injury." (Doc. 33, p. 1). Apparently, at the heart of this agreement is United States Supreme Court's recent decision in <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540 (2016). <u>See</u> (Doc. 28, pp. 14-22); (Doc. 33, p. 1).

However, before addressing the Supreme Court's decision in <u>Spokeo</u>, it is important to discuss the United States Court of Appeals for the Third Circuit's discussion of Article III standing in <u>In re Google Inc. Cookie Placement Consumer Privacy Litigation</u>, 806 F.3d 125 (3d Cir. 2015). "The <u>Google</u> plaintiffs consisted of a class of persons who used two web browsers: Apple's Safari and Microsoft's Internet Explorer." <u>In re Nickelodeon Consumer Privacy Litig.</u>, 827 F.3d 262, 272 (3d Cir. 2016). "These browsers came with cookie-blocking options designed to protect users' privacy while they browsed the Internet." <u>Id.</u> "In February of 2012, a Stanford graduate student revealed that Google and several other advertising companies had devised ways to evade these cookie-blocking options, even while touting publicly that they respected their users' choices about whether to take advantage of cookie-blocking technology." <u>Id.</u> The plaintiffs in <u>Google</u> "filed a federal lawsuit alleging violations of the Wiretap Act, the Stored Communications Act, and the Computer Fraud and Abuse Act," along with claims brought under California law. <u>Id.</u>

"The defendants moved to dismiss the entire complaint for lack of Article

III standing and for failure to state any claim." <u>Google</u>, 806 F.3d at 133-34. As summarized by the Third Circuit, "[w]ithout definitively resolving the standing challenge, the District Court agreed with the defendants that the allegations in the complaint did not give rise to any action, and on that basis dismissed the complaint under Rule 12(b)(6)." <u>Id.</u> at 134. The case was appealed to the United States Court of Appeals for the Third Circuit where the plaintiffs challenged "the dismissal of each of their nine claims, and the defendants renew[ed] their contention that the plaintiffs lack Article III standing." <u>Id.</u>

In addressing the defendants' "argument that the plaintiffs lack standing," the Third Circuit began by noting that "'[t]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" <u>Id.</u> (quoting <u>Storino v. Borough of Point Pleasant Beach</u>, 322 F.3d 293, 296 (3d Cir. 2003)). "A core requirement of standing," the Third Circuit stated, "is that the plaintiff have suffered an injury in fact." <u>Id.</u> The defendants in <u>Google</u> argued that the plaintiffs failed "to demonstrate injury in fact because" they made "insufficient allegations of pecuniary harm" <u>Id.</u> However, the Third Circuit determined that "[f]or purposes of injury in fact, the defendants' emphasis on economic loss is misplaced." <u>Id.</u> According to the Third Circuit, "[i]n assessing injury in fact, we look for an 'invasion . . . which is (a) concrete and

particularized; and (b) actual or imminent, not conjectural or hypothetical.'"
Google, 806 F.3d at 134. "Though the 'injury must affect the plaintiff in a
personal and individual way,'[footnote omitted] this standard does not demand
that a plaintiff suffer any particular type of harm to have standing." Id. (quoting
Lujan, 504 U.S. at 560 n.1). "Consequently, and contrary to the contentions of the
defendants," the Third Circuit concluded, "a plaintiff need not show actual
monetary loss for purposes of injury in fact." Id. "Rather," according to the Third
Circuit, "'the actual or threatened injury required by Art. III may exist solely by
virtue of statutes creating legal rights, the invasion of which creates standing.'"
Id. (quoting Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982)).

As for the Article III standing issue before the Third Circuit in Google,
"[t]he plaintiffs . . . base[d] their claims on highly specific allegations that the
defendants, in the course of serving advertisements to their personal web
browsers, implanted tracking cookies on their personal computers." Id. (emphasis
in original). "Irrespective of whether these allegations state a claim," the Third
Circuit determined, "the events that the complaint describes are concrete,
particularized, and actual as to the plaintiffs." Id. at 134-35. Further, the Third
Circuit found that "[t]o the extent that the defendants believe that the alleged
conduct implicates interests that are not legally protected, this is an issue of the

merits rather than of standing." Google, 806 F.3d at 135. As a result, the Third Circuit concluded that the plaintiffs established "injury in fact" and that it had "jurisdiction to address the merits of their claims." Id.

Subsequent to the Third Circuit's decision in Google, the United States Supreme Court addressed Article III standing in Spokeo, which, as noted, serves as the basis for the apparent agreement between the parties that Plaintiff lacks standing in this matter under Article III. See (Doc. 28, pp. 14-22); (Doc. 33, p. 1). In Spokeo, the Supreme Court stated the following in relation to the standing requirement found in Article III of the United States Constitution:

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. Lujan, 504 U.S., at 560. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. . . . To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560, 112 S. Ct. 2130 (internal quotation marks omitted).

Spokeo, 136 S. Ct. at 1547-48. In regards to what constitutes "concrete," the Supreme Court stated that "'[c]oncrete' is not, however, necessarily synonymous with 'tangible.'" Id. at 1549. The Supreme Court continued by noting that "[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in

many of our previous cases that intangible injuries can nevertheless be concrete."

Spokeo, 136 S. Ct. at 1549 (citing Pleasant Grove City v. Summum, 555 U.S. 460

(2009); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U.S. 520 (1993)). "In

determining whether an intangible harm constitutes injury in fact, both history and

the judgment of Congress play important roles." Id. According to the Supreme

Court:

> [b]ecause the doctrine of standing derives from the case-or-
> controversy requirement, and because that requirement in turn
> is grounded in historical practice, it is instructive to consider
> whether an alleged intangible harm has a close relationship to a
> harm that has traditionally been regarded as providing a basis
> for a lawsuit in English or American courts.

Id. (citing Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S.

765, 775-77 (2000)). "In addition," the Supreme Court continued, "because

Congress is well positioned to identify intangible harms that meet minimum

Article III requirements, its judgment is also instructive and important." Id.

"Thus, we said in Lujan that Congress may 'elevat[e] to the status of legally

cognizable injuries concrete, de facto injuries that were previously inadequate in

law.'" Id. (quoting Lujan, 504 U.S. at 578).

The Supreme Court also noted in Spokeo that "Congress' role in identifying

and elevating intangible harms does not mean that a plaintiff automatically

satisfies the injury-in-fact requirement whenever a statute grants a person a

statutory right and purports to authorize that person to sue to vindicate that right."

Spokeo, 136 S. Ct. at 1549. "Article III standing requires a concrete injury even in

the context of a statutory violation." Id. As a result, the Supreme Court concluded

that a plaintiff "could not, for example, allege a bare procedural violation,

divorced from any concrete harm, and satisfy the injury-in-fact requirement of

Article III." Id. (citing Summers, 555 U.S. at 496; Lujan, 504 U.S. at 572).

Importantly, however, the Supreme Court stated that "[t]his does not mean . . . that

the risk of real harm cannot satisfy the requirement of concreteness." Id. (citing

Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138 (2013)). According to the

Supreme Court:

> Just as the common law permitted suit in such instances, the
> violation of a procedural right granted by statute can be
> sufficient in some circumstances to constitute injury in fact. In
> other words, a plaintiff in such a case need not allege any
> additional harm beyond the one Congress has identified.

Id. (citing Federal Election Comm'n v. Akins, 524 U.S. 11, 20-25 (1998); Pub.

Citizen v. Dep't of Justice, 491 U.S. 440, 449 (1989)).

Recently, the United States Court of Appeals for the Third Circuit has

considered the impact of Spokeo on Article III standing. In particular, the Third

Circuit in In re Nickelodeon Consumer Privacy Litigation, 827 F.3d 262 (3d Cir.

2016), discussed, inter alia, whether Spokeo changed the Article III standing analysis as set forth in the Third Circuit's decision in Google. In reaching its decision, the Third Circuit noted in Nickelodeon that "[t]he Supreme Court's recent decision in Spokeo . . . does not alter our prior analysis in Google." Nickelodeon, 827 F.3d at 273.

In a separate case, the Third Circuit provided further guidance concerning the impact of Spokeo on Article III standing. Specifically, in Bock v. Pressler & Pressler, LLP, 658 F. App'x 63 (3d Cir. 2016), the Third Circuit stated that "[w]hile the Supreme Court did not change the rule for establishing standing in Spokeo, it used strong language indicating that a thorough discussion of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact." Id. at 65 (citing Spokeo, 136 S. Ct. at 1545). However, the Third Circuit went on to state in Bock that it has "interpreted Spokeo to say that 'even certain kinds of "intangible" harms can be "concrete" for purposes of Article III . . . . What a plaintiff cannot do . . . is treat a "bare procedural violation . . . [that] may result in no harm" as an Article III injury-in-fact.'" Id. (alterations in original) (quoting Nickelodeon, 827 F.3d at 274). The Third Circuit "observed that 'in some cases an injury-in-fact may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'" Id. (quoting Nickelodeon,

16

827 F.3d at 273). "Specifically," the Third Circuit "addressed the Supreme Court's deference to Congress, noting that 'Spokeo directs us to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for lawsuit,"' and 'Congress's judgment on such matters is . . . "instructive and important.""" Bock, 658 F. App'x at 65 (quoting Nickelodeon, 827 F.3d at 274).

In an even more recent decision by the Third Circuit, namely, In re Horizon Healthcare Services Inc. Data Breach Litigation, 846 F.3d 625 (3d Cir. 2017), Article III standing, and the impact of Spokeo on such, again was discussed. In Horizon, the Third Circuit addressed the defendant's argument "that the Supreme Court's recent decision in Spokeo . . . compels" the finding that the plaintiffs had not suffered an injury sufficient to establish Article III standing. Id. at 636. The Third Circuit disagreed. Id. As part of this determination, the Third Circuit stated that:

> [a]lthough it is possible to read the Supreme Court's decision in Spokeo as creating a requirement that a plaintiff show a statutory violation has caused a "material risk of harm" before he can bring suit, . . . we do not believe that the Court so intended to change the traditional standard for the establishment of standing.

Id. at 637-38 (citing Spokeo, 136 S. Ct. at 1550). The Third Circuit continued by stating that "[a]s we noted in Nickelodeon, '[t]he Supreme Court's recent decision

in Spokeo . . . does not alter our prior analysis in Google.'" Horizon, 846 F.3d at 638 (quoting Nickelodeon, 827 F.3d at 273).

Here, Plaintiff asserts that she seeks "statutory damages only," and is not seeking "an award of actual damages." (Doc. 28, p. 5). With this in mind, the parties agree that Plaintiff is merely alleging a statutory violation of the FDCPA and, thus, is not alleging that she has suffered an invasion of a legally protected interest that is sufficiently "concrete."[2] See (Id. at pp. 14-22); (Doc. 32, p. 1); (Doc.33, p. 1); (Doc. 34, p. 12); (Doc. 36, p. 1); (Doc. 37, pp. 4, 8); (Doc. 38, p. 4). However, as stated, the parties' agreement on this point does not end the inquiry. See Spokeo, 136 S. Ct. at 1549 ("a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified."). Rather, Spokeo directs the Court "'to consider whether an alleged injury-in-fact "has traditionally been regarded as providing a basis for lawsuit,"' and 'Congress's judgment on such matters is . . . "instructive and important."'" Bock, 658 F. App'x at 65 (quoting Nickelodeon, 827 F.3d at 274).

---

[2] The parties rely solely on the lack of concreteness as the basis for their apparent agreement that Plaintiff lacks Article III standing. See (Doc. 28, pp. 14-22); (Doc. 32, p. 1); (Doc.33, p. 1); (Doc. 34, p. 12); (Doc. 36, p. 1); (Doc. 37, pp. 4, 8); (Doc. 38, p. 4). In addition to the analysis presented below concerning concreteness, the Court has also reviewed the other elements of Article III standing and finds that those elements have been satisfied.

The relevant portion of the FDCPA in this case is section 1692e, which is "the provision of the law dealing with communications from debt collectors to debtors." Jensen v. Pressler & Pressler, 791 F.3d 413, 419 (3d Cir. 2015). Under section 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. "The sub-parts of § 1692e comprise a non-exhaustive list of debt collection practices that violate the prohibition on false or misleading representation." Jensen, 791 F.3d at 418 n.2 (citing 15 U.S.C. § 1692e). The sub-part alleged to have been violated here is section 1692e(10), which prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

"While the Third Circuit has not addressed whether a violation of the FDCPA can give rise to a concrete injury, post-Spokeo," a number of district courts in the Third Circuit have addressed that question. Fuentes, 2017 U.S. Dist. LEXIS 48923, at *9 (citing Thomas v. Youderian, 2017 U.S. Dist. LEXIS 16585, at *20-21 (D.N.J. Feb. 3, 2017); Carney v. Goldman, 2016 U.S. Dist. LEXIS 177087, at *14 (D.N.J. Dec. 22, 2016); Blaha v. First Nat'l Collection Bureau, Inc., 2016 U.S. Dist. LEXIS 157575, at *19 (D.N.J. Nov. 10, 2016)). "In fact,

'[s]ince Spokeo was decided, the overwhelming majority of courts that have faced

Article III standing challenges in FDCPA cases . . . have determined that a

violation of the FDCPA produces a "concrete injury."'" Pisarz v. GC Servs., L.P.,

2017 U.S. Dist. LEXIS 42880, at *12-13 (D.N.J. Mar. 24, 2017) (citing Sullivan v.

Allied Interstate, LLC, 2016 U.S. Dist. LEXIS 145451 (W.D. Pa. Oct. 18, 2016),

report and recommendation adopted, 2016 U.S. Dist. LEXIS 170333 (W.D. Pa.

Dec. 9, 2016); Quinn v. Specialized Loan Servicing, LLC, 2016 U.S. Dist. LEXIS

107299 (N.D. Ill. Aug. 11, 2016)); but see Benali, 2017 U.S. Dist. LEXIS 783, at

*14-15.

Specifically, in Medina v. Allianceone Receivables Management, Inc., 2017

U.S. Dist. LEXIS 7325 (E.D. Pa. Jan. 19, 2017), the United States District Court

for the Eastern District of Pennsylvania addressed the impact of Spokeo on a

plaintiff's Article III standing under circumstances similar to those in this matter.

In Medina, the plaintiff filed a "putative class action under the [FDCPA]." Id. at

*1. The plaintiff alleged that the "defendant, a debt collector under 15 U.S.C. §

1692a(6), sent a letter to him in which it sought to settle for $222.28 a debt of

$341.97 owed by [the plaintiff] . . . ." Id. "In the letter, defendant stated, among

other things, 'Our client Department Store National Bank will report forgiveness

of debt as required by IRS regulations.'" Id. The plaintiff in Medina claimed that

"this statement is deceptive and misleading because, contrary to the letter, the IRS reporting requirement is not mandatory under all circumstances where a debt or part of a debt is forgiven." Medina, 2017 U.S. Dist. LEXIS 7325, at *1-2. Rather, the plaintiff claimed that an exception "to the IRS reporting requirement . . . excludes the need to report where the forgiveness does not exceed $600.00." Id. at *2 (citing 26 C.F.R. § 1.6050P-1(a)). According to the District Court, that "appears to be the situation here." Id.

The defendant in Medina moved to dismiss the amended complaint for lack of subject matter jurisdiction or in the alternative for judgment on the pleadings. Id. The District Court noted that "[i]n support of its motion to dismiss for lack of subject matter jurisdiction, defendant first argues that plaintiff does not have" Article III standing. Id.

After a discussion of the relevant portions of Spokeo, which included the notation that "[t]he risk of real harm' can also satisfy the concreteness test," Id. at *3 (quoting Spokeo, 136 S. Ct. at 1549), the District Court turned to assess whether the plaintiff had established Article III standing. Id. at *3-4. The court began by stating that "[t]he overriding purpose of the FDCPA is 'to eliminate abusive debt collection practices by debt collectors.'" Id. at *3 (quoting 15 U.S.C. § 1692). "Those abusive debt collection practices," the District Court noted,

"included the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" <u>Medina</u>, 2017 U.S. Dist. LEXIS 7325, at *3 (quoting 15 U.S.C. § 1692e).  And, the court further stated that "[t]he FDCPA gives a consumer the right to sue for damages for any violation." <u>Id.</u> (citing 15 U.S.C. § 1692k).

With those principals in mind, the court then determined that "[t]he injury to the consumer alleged here is the false and misleading statement made by the debt collector in an effort to collect or settle the consumer's debt obligation." <u>Id.</u>  The court noted that "[t]he FDCPA is designed to protect the consumer from the inherent harm caused when a debt collector, in seeking to collect a debt, is not straight with the consumer but instead makes a false or deceptive statement to achieve its purpose." <u>Id.</u>  Accordingly, "[t]he deceptive declaration in the letter about a requirement to report the consumer's resolution of the debt to the IRS creates a particularized and concrete injury, at the very least unnecessary fear and anxiety on the part of the consumer." <u>Id.</u>  "While the harm may be intangible," the court continued, "it involves a <u>de</u> <u>facto</u> injury nonetheless." <u>Id.</u> at *3-4.  The court stated that "[t]he FDCPA was enacted to provide redress for such a result." <u>Id.</u> at *4 (citing <u>In re Nickelodeon</u>, 827 F.3d at 273-74).  As a result, the District Court held that the plaintiff had "standing to bring this action." <u>Id.</u>

As this Court has already found, Plaintiff has sufficiently plead a claim

under section 1692e of the FDCPA.[3]  <u>Balon v. Enhanced Recovery Co.</u>, 190 F.

---

[3] Moreover, a plaintiff that "adequately alleg[es] a 'false, deceptive, or misleading representation' under Section 1692e that is materially misleading to the least sophisticated consumer satisfies the concrete injury component of Article III standing because such conduct violates an individual's substantive statutory right to be free of abusive debt practices."  <u>Bautz v. ARS Nat'l Servs.</u>, 2016 U.S. Dist LEXIS 178208, at *2 (E.D. Pa. Dec. 23, 2016).  Notably, "[t]he Supreme Court's decision in <u>Spokeo</u> . . . [does] not suggest otherwise; rather [<u>Spokeo</u>] addressed alleged <u>procedural</u> violations of statutes, which do not automatically confer standing absent concrete harm that satisfies the injury-in-fact requirement of Article III."  <u>Id.</u> (emphasis in original).  Here, Plaintiff alleges a claim that involves allegedly deceptive and misleading communication which is a "<u>substantive</u> violation of Section 1692e . . . ."  <u>Id.</u> at *2-3 (emphasis in original); <u>see</u> <u>Moskovites v. Aldridge Pite, LLP</u>, 2017 U.S. App. LEXIS 1199, at *7 (11th Cir. Jan. 24, 2017) (identifying a claim brought under section 1692e as a "substantive count[]"); <u>Simon v. FIA Card Servs., N.A.</u>, 732 F.3d 259, 265 (3d Cir. 2013) (identifying section 1692e as a substantive provision of the FDCPA) (quoting <u>Glazer v. Chase Home Fin. LLC</u>, 704 F.3d 453, 459-60 (6th Cir. 2013)); <u>Fuentes</u>, 2017 U.S. Dist. LEXIS 48923, at *14 ("this Court joins the 'overwhelming majority of courts' that have determined that FDCPA violations under §§ 1692e and 1692f give rise to concrete, substantive injuries sufficient to establish Article III standing.") (citing <u>Pisarz</u>, 2017 U.S. Dist. LEXIS 42880 (D.N.J. Mar. 24, 2017); <u>Bernal v. NRA Grp., LLC</u>, 318 F.R.D. 64 (N.D. Ill. 2016)).  Recently, the United States District Court for the Southern District of New York noted that "[s]ince the Supreme Court's decision in <u>Spokeo</u>, courts outside [the Second Circuit] have consistently held that a violation of 15 U.S.C. § 1692e can give rise to an injury in fact."  <u>Taylor v. Fin. Recovery Servs., Inc.</u>, 2017 U.S. Dist. LEXIS 76243, at *7 (S.D.N.Y. May 18, 2017) (citing <u>Church v. Accretive Health, Inc.</u>, 654 F. App'x 990, 994-95 (11th Cir. 2016); <u>Fuentes</u>, 2017 U.S. Dist. LEXIS 48923; <u>Garcia v. Law Offices Howard Lee Schiff P.C.</u>, 2017 U.S. Dist. LEXIS 48071 (D. Conn. Mar. 30, 2017); <u>Bautz</u>, 2016 U.S. Dist. LEXIS 178208).  The District Court went on to state that "[t]hese courts reason that a materially false or misleading statement is not a 'bare procedural violation' but rather an infringement on an individual's substantive right conferred by Congress

Supp. 3d 385, 393 (M.D. Pa. 2016) (Nealon, J.). Further, the record shows that

Plaintiff received the February 9, 2015 collection letter, which contained an

allegedly false and/or deceptive communication that was made to collect or

attempt to collect Plaintiff's debt or to obtain information concerning Plaintiff.

See (Doc. 30); Balon, 190 F. Supp. 3d 385, 393. As stated in Medina, "[t]he

FDCPA is designed to protect the consumer from the inherent harm caused when a

debt collector, in seeking to collect a debt, is not straight with the consumer but

instead makes a false or deceptive statement to achieve its purpose." Medina,

2017 U.S. Dist. LEXIS 7325, at *3. Further, "[i]n enacting FDCPA, Congress

elevated certain abusive debt collection practices to the status of viable federal

causes of action." Bock v. Pressler & Pressler, LLP, 2017 U.S. Dist. LEXIS

81058, at *21 (D.N.J. May 25, 2017). "Such practices violate interests

traditionally recognized at law; proscriptions against fraud or false statements

should come as no surprise." Id. at * 21-22. Among these abuses is "[t]he use of

any false representation or deceptive means to collect or attempt to collect any

debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

"[T]he right to truthful information in this context is a substantive right." Bock,

---

to receive truthful information in debt collection communications." Taylor, 2017
U.S. Dist. LEXIS 76243, at *7-8 (citing Garcia, 2017 U.S. Dist. LEXIS 48071, at
*8-9; Bautz, 2016 U.S. Dist. LEXIS 178208, at *27-28).

2017 U.S. Dist. LEXIS 81058, at *22 (citing <u>Linehan v. Allianceone Receivables</u>

<u>Mgmt., Inc.</u>, 2016 U.S. Dist. LEXIS 124276 (W.D. Wash. Sept. !3, 2016)).  As a

result, following the guidance provided in <u>Spokeo</u>, <u>Google</u>, <u>Nickelodeon</u>, and

<u>Horizon</u>, as well as the well reasoned decisions in other district courts, <u>see</u>, <u>e.g.</u>,

<u>Medina</u>, 2017 U.S. Dist. LEXIS 7325, the Court determines that Plaintiff's receipt

of a deceptive communication used to collect or attempt to collect a debt

establishes that Plaintiff suffered a sufficiently "concrete" and "particularized"

injury for purposes of Article III standing.[4]

Based on the foregoing, Defendant's motion to dismiss the complaint for

lack of subject matter jurisdiction, (Doc. 27), and Plaintiff's motion to remand,

---

[4] Defendant argues that Plaintiff's failure to allege actual damages is an
indication that Plaintiff lacks Article III standing.  (Doc. 28, pp. 5-6, 20-21); (Doc.
39, pp. 7-8).  Albeit in support of her request for attorney's fees and costs
associated with the removal of this action, Plaintiff "disputes that anything in her
discovery responses would indicate that there was no standing."  (Doc. 40, p. 10
n.5).  "Rather," Plaintiff continues, "the responses on which Defendant relies
clearly state that Plaintiff's claim was not for actual damages, but were instead for
statutory damages."  (<u>Id.</u>).  According to Plaintiff, "[t]hese discovery responses did
not address the issue of standing, intangible injuries, or concrete injuries."  (<u>Id.</u>).
The Court agrees with Plaintiff to the extent that she argues that the discovery
responses relied upon by Defendant fail to support its claim that Plaintiff lacks
standing.  Notably, a "plaintiff need not allege actual damages to recover statutory
damages" in an FDCPA claim.  <u>Williams-Lester v. Vision Fin. Corp.</u>, 2017 U.S.
Dist. LEXIS 14851, at *13 (E.D. Pa. Feb. 1, 2017) (citing <u>Manopla v. Bryant,</u>
<u>Hodge & Assocs.</u>, LLC, 2014 U.S. Dist. LEXIS 24554, at *18 (D.N.J. Feb. 11,
2014)).

(Doc. 33), will be denied because Plaintiff has standing to bring the instant claim.

As a result, the Court will now turn to Plaintiff's motion for summary judgment,

(Doc. 29), which is ripe for disposition. <u>See</u> (Docs. 29-31, 34-35, 38).

## II.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(c); <u>Turner v. Schering-Plough Corp.</u>, 901 F.2d 335, 340

(3d Cir. 1990). The party moving for summary judgment bears the burden of

showing the absence of a genuine issue as to any material fact. <u>Celotex Corp. v.</u>

<u>Catrett</u>, 477 U.S. 317, 323 (1986). Once this showing has been made, the non-

moving party must offer specific facts contradicting those averred by the movant

to establish a genuine issue of material fact. <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497

U.S. 871, 888 (1990). All inferences "should be drawn in the light most favorable

to the nonmoving party, and where the nonmoving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." <u>Pastore v. Bell Tel. Co.</u>,

24 F.3d 508, 512 (3d Cir. 1994) (quoting <u>Big Apple BMW, Inc. v. BMW of North</u>

<u>Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992), <u>cert.</u> <u>denied</u>, 507 U.S. 912 (1993)).

**B.**     <u>Statement of Undisputed Facts</u>

Plaintiff, a natural person, resides at 34 Highland Drive, Hanover Township, Pennsylvania 18706.  (Doc. 30, p. 1); (Doc. 35, p. 1).  Defendant, a corporation, has a place of business located at 8014 Bayberry Road, Jacksonville, Florida 32256.  (<u>Id.</u>).

On February 9, 2015, Defendant mailed a collection letter to Plaintiff.  (<u>Id.</u>). Plaintiff received the collection letter.  (<u>Id.</u>).  The letter informed Plaintiff that she owed "$798.67," and that Defendant was "willing to reduce [Plaintiff's] outstanding balance by offering a discounted payoff amount of $638.94."  (Doc. 30-1).  The letter went on to state, in relevant part, that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050(P) and related federal law."  (<u>Id.</u>).

Defendant sent the letter in an attempt to collect an obligation from Plaintiff, which was for a credit card.  (Doc. 30, pp. 1-2); (Doc. 35, pp. 1-2). Plaintiff never used the credit card for anything other than personal, household, or family purposes.  (Doc. 30, p. 2); (Doc. 35, p. 2).  Defendant has stipulated that if Plaintiff's credit card obligation is a "debt" under the FDCPA, then it is a "debt collector" as defined by the FDCPA.  (<u>Id.</u>); (Doc. 30-3, p. 18).

## C.    Discussion

Plaintiff argues that for her "to succeed on her claim, she needs only to establish that the FDCPA applies to Defendant's collection activity."  (Doc. 31, p. 4).  Plaintiff contends that "to make such a showing" she:

> needs to prove that: (1) she is a "consumer," (2) Defendant mailed the collection letter to Plaintiff, (3) Defendant was attempting to collect on account from Plaintiff, (4) the account Defendant was attempting to collect was a "debt," and (5) Defendant is a "debt collector."

(Id.).  According to Plaintiff, "the record evidence clearly establishes that Plaintiff should prevail on her claim."  (Id.).

In particular, Plaintiff contends that her affidavit and Defendant's admissions establish that she is a "consumer" as defined by section 1692a(3) of the FDPCA.  (Id.).  "Consumer" is defined by the FDCPA as "any natural person obliged or allegedly obliged to pay any debt."  15 U.S.C. § 1692a(3).  According to Plaintiff, her affidavit demonstrates that she is a "natural person" who owed a debt for a credit card, (Doc. 30, p. 2), while Defendant "has admitted that it was attempting to collect an account from Plaintiff when it sent the letter to her." (Doc. 31, p. 4).

Plaintiff also contends that it is undisputed that Defendant mailed the collection letter to Plaintiff in an attempt to collect on an account.  (Id. at pp. 4-5).

Specifically, Plaintiff states that "Defendant has . . . admitted that it mailed the collection letter to Plaintiff, and that when it did so it was attempting to collect an account." (Doc. 31, pp. 4-5); <u>see</u> (Doc. 30, p. 1). Consequently, Plaintiff argues that it is undisputed that she "has satisfied the second and third elements discussed above." (Doc. 31, p. 5).

Next, Plaintiff argues that "[t]here is also uncontroverted record evidence establishing that Defendant was attempting to collect a 'debt' as defined by the FDCPA." (<u>Id.</u>). According to Plaintiff, her "affidavit demonstrates that the alleged account was used only for personal, family, or household purposes." (<u>Id.</u>). "Furthermore," Plaintiff continues, "Defendant has stated that it does not have 'any information as to whether any obligation it attempts to collect constitutes a debt under the FDCPA.'" (<u>Id.</u>). "Thus, because Plaintiff's testimony regarding this topic will be uncontroverted," Plaintiff concludes, "she has satisfied" her burden to establish that the account Defendant was attempting to collect on was a "debt" under the FDCPA. (<u>Id.</u>).

As for Defendant's status under the FDCPA, Plaintiff claims that "[t]here is also no dispute that Defendant is a 'debt collector.'" (<u>Id.</u>). Plaintiff states that "Defendant has admitted that if the account at issue is a 'debt' under the FDCPA, then Defendant was a 'debt collector' under the FDCPA." (<u>Id.</u>). "As discussed in

the previous paragraph, Plaintiff's account was used only for personal, family, or household purposes–making it a 'debt' under the FDCPA." (Doc. 31, pp. 5-6). As a result, Plaintiff argues, "pursuant to Defendant's admission, Defendant was a 'debt collector' under the FDCPA." (Id. at p. 6).

In response, Defendant argues that Plaintiff's motion for summary judgment should be denied because her claim presents a question of fact that must be decided by a jury. (Doc. 34, pp. 8-12). Defendant states that "[c]ourts have held that claims under Section 1692e(10) present a question of fact that must be decided by a jury." (Id. at p. 8). In support of this claim, Defendant cites to a number of federal courts which, Defendant contends, have made determinations that support its position at bar. Specifically, Defendant cites to the following: the United States Court of Appeals for the Ninth Circuit, the United States District Court for the District of Delaware, the United States District Court for the Central District of California, and the United States District Court for the Eastern District of Missouri. (Id. at pp. 8-11) (citing Jeter v. Credit Bureau, 760 F.2d 1168 (11th Cir. 1985); Anthes v. Transworld Sys., Inc., 765 F. Supp. 162 (D. Del. 1991); Hosseinzadeh v. M.R.S. Assocs., 387 F. Supp. 2d 1104 (C.D. Cal. 2005); Thomas v. Consumer Adjustment Co., 579 F. Supp. 2d 1290 (E.D. Mo. 2008)). According to Defendant, "[j]ust as in the above cases, the issue of whether the language in the

February 9, 2015 Letter constitutes a false representation or deceptive means to collect or attempt to collect the Plaintiff's obligation must be decided by a jury." (Doc. 34, p. 11). Defendant contends that:

> Given that there is absolutely no evidence that the Plaintiff made any payments as a result of receiving the February 9, 2015 Letter, relied in any way to her detriment on the February 9, 2015 Letter, or suffered any actual damages, the issue of whether there was any false representation or deception constitutes a genuine issue of a disputed material fact.

(Id. at pp. 11-12).[5]

Plaintiff contends in reply that "Defendant's argument is inconsistent with binding Third Circuit precedent." (Doc. 38, p. 1). "Specifically," Plaintiff argues, "a collection letter is analyzed through the perspective of the 'least sophisticated debtor,' and not through the perspective of the actual plaintiff, the question of whether a debt collection letter violates the FDCPA is a question of law." (Id.)

---

[5] The Court notes that Defendant also argues that "Summary Judgment is inappropriate for the reasons set forth in Defendant's Motion to Dismiss Plaintiff's Complaint for Lack of Article III Standing" and "incorporates by reference all of its arguments in its Motion to Dismiss." (Doc. 34, p. 12) (citing (Docs. 27-28)). As part of this contention, Defendant reasserts that "Plaintiff admits that she has not suffered the required concrete injury." (Id.) (citing (Doc. 32)); Spokeo, 136 S. Ct. at 1549-50. "As a result," Defendant argues, "Plaintiff lacks Article III standing to bring her claim under the FDCPA." (Id.). "Because Plaintiff has not suffered a concrete injury," Defendant concludes, "summary judgment should be denied." (Id.). For the reasons discussed in section I above, this argument is without merit.

(citing <u>Wilson</u>, 225 F.2d at 353 n.2; <u>Huertas</u>, 641 F.3d at 33 n.5; <u>Caprio</u>, 709 F.3d at 147). According to Plaintiff, "[n]one of Defendant's cited authority is consistent with this binding precedent." (Doc. 38, p. 2).

As stated, to prevail on her FDCPA claim, Plaintiff must prove that: (1) she is a "consumer," (2) Defendant is a "debt collector," (3) Defendant's challenged practice involved an attempt to collect a "debt" as the FDCPA defines it, and (4) Defendant's challenged practice violated section 1692e(10) of the FDCPA. <u>Douglass v. Convergent Outsourcing</u>, 765 F.3d 299, 303 (3d Cir. 2014) (citing <u>Piper v. Portnoff Law Assocs., Ltd.</u>, 396 F.3d 227, 232 (3d Cir. 2005)). Initially, the Court notes that there is no real disagreement concerning the first three elements of Plaintiff's FDCPA action. <u>See</u> (Docs. 31, 34, 38). Rather, the parties focus their energies on the final element of Plaintiff's FDCPA claim.[6] In

---

[6] Pursuant to Federal Rule of Civil Procedure 56(a), the Court may not grant summary judgment unless the movant "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Thus, while the parties do not argue over whether Plaintiff is a "consumer," Defendant is a "debt collector," or Defendant's challenged practice as an attempt to collect a "debt," the Court has reviewed the record and reached a determination that there are no genuine issues of material fact as to these elements of Plaintiff's FDCPA claim. (Doc. 30, pp. 1-2); (Doc. 30-2); (Doc. 35, pp. 1-2). Further, based on the undisputed evidence, Plaintiff has satisfied these elements. (<u>Id.</u>). As a result, the remaining portion of this Memorandum will only address the final element of Plaintiff's FDCPA claim, namely, whether Defendant's challenged practice violated section 1692e of the FDCPA.

particular, the parties disagree over whether the Court or a jury should make the determination concerning the final element of Plaintiff's claim.

Plaintiff argues that her claim can, and should, be decided as a matter of law. See (Doc. 31, pp. 3-4); (Doc. 38, pp. 1-4). Defendant, on the other hand, argues that Plaintiff's claim presents a genuine issue of material fact for a jury to decide. (Doc. 34, pp. 8-12).[7] As discussed in more detail below, the Court will resolve the question as a matter of law and find in favor of granting Plaintiff's motion for summary judgment.

Turning first to the question of whether Plaintiff's claim can be resolved as a matter of law, the Court begins by looking to the United States Court of Appeals for the Third Circuit's decision in Wilson v. Quadramed Corp., 225 F.3d 350 (3d Cir. 2000). In Wilson, the issue was:

> whether the District Court erred as a matter of law in holding that language contained in a debt collection letter, which

---

[7] The Court notes that earlier in this action Defendant filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See (Doc. 4). As part of that motion Defendant stated, in support of its contention that Plaintiff's claim fails as a matter of law, that "[w]hether identified language violates the FDCPA is often a question of law that may be addressed on a motion to dismiss." (Id. at p. 6) (citing Huertas, 641 F.3d at 33). As stated, Defendant now argues that the application of the "least sophisticated consumer" standard is not a question of law, but, rather, a question of fact for a jury. See (Doc. 34, pp. 8-12). Defendant's new stance on this issue appears to be inconsistent with its earlier contention. Nevertheless, the Court will address Defendant's current position.

> notified the debtor that his account has been placed with the debt collector for 'immediate collection,' and that it 'shall afford [the debtor] the opportunity to pay this bill immediately and avoid further action against you,' did not overshadow or contradict the required validation notice under 15 U.S.C. § 1692g(a) and, therefore, did not confuse or mislead the "least sophisticated debtor" as to his statutory rights under the [FDCPA] to validate and dispute the debt.

Wilson, 225 F.3d at 351 (first alteration in original). In reaching its decision, the Third Circuit declined the follow the Seventh Circuit's holding that "whether an unsophisticated consumer would be confused by allegedly contradictory or overshadowing language is a question of fact which precludes dismissal under Fed. R. Civ. P. 12(b)(6)." Id. at 353 n.2 (citing Walker v. Nat'l Recovery, Inc., 200 F.3d 500, 503 (7th Cir. 1999)). Rather, the Third Circuit agreed "with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law." Id. According to the Third Circuit a "majority of courts to have considered this question have . . . held that this determination involves a question of law." Id. (citing Terran v. Kaplan, 109 F.3d 11428, 1432-33 (9th Cir. 1997); Swanson v. S. Ore. Credit Serv., Inc., 869 F.2d 1222-1225-26 (9th Cir. 1988); Russell v. Equifax A.R.S., 74 F.3d 30, 33, 35 (2d Cir. 1996)). As a result, the Third Circuit stated that it agreed "with the majority that whether language in a collection letter contradicts or overshadows the validation notice is a question of law." Id.; see Szczurek v. Prof'l Mgmt., 627 F.

App'x 57, 60 (3d Cir. 2015) ("Whether language in a collection letter violates the FDCPA is a question of law.") (citing <u>Wilson</u>, 225 F.3d at 353 n.2).

In <u>Huertas v. Galaxy Asset Mgmt.</u>, 641 F.3d 28 (3d Cir. 2011), the Third Circuit also provided guidance on this issue. In particular, the Third Circuit addressed, <u>inter alia</u>, whether "a debt collector may attempt to collect upon a time-barred debt without violating" the FDCPA. <u>Id.</u> at 32. Subsequent to determining that a letter at issue "threatened litigation," the Third Circuit stated that "[w]hether a debt collector's communications threaten litigation in a manner that violates the FDCPA depends on the language of the letter, which 'should be analyzed from the perspective of the "least sophisticated debtor."'" <u>Id.</u> at 33 (quoting <u>Brown v. Card. Serv. Ctr.</u>, 464 F.3d 450, 453 (3d Cir. 2006)). The Third Circuit noted that "[i]n this Circuit, such an analysis is appropriately undertaken on a rule 12(b)(6) motion, <u>see Wilson</u>[], 225 F.3d [at 353 n.2], or a motion for judgment on the pleadings, <u>see Rosenau v. Unifund Corp.</u>, 539 F.3d 218, 221 (3d Cir. 2008)." <u>Id.</u> at 33 n.5.

Also of note is the Third Circuit's brief discussion in <u>Lesher v. Law Offices of Mitchell N. Kay, PC</u>, 650 F.3d 993 (3d Cir. 2011), as to whether a communication that is alleged to be false or misleading under the FDCPA is properly handled as a question of law. Notably, the Third Circuit stated that "[t]he

District Court assumed that whether a communication is false and misleading under the FDCPA is a question of law, and neither party challenges this aspect of the District Court's decision on appeal." Lesher, 650 F.3d at 996 n.6. The Third Circuit, reviewing the lower court's grant of summary judgment de novo, affirmed the District Court determination that the letters at issue "violate section 1692e's general prohibition against 'false, deceptive, or misleading' communications because they falsely imply that an attorney, acting as an attorney, is involved in collecting [the plaintiff's] debt." Id. at 1003.

In Kryluk v. Northland Group, Inc., 2014 U.S. Dist. LEXIS 164876 (E.D. Pa. Nov. 25, 2014), the United States District Court for the Eastern District of Pennsylvania addressed, inter alia, the defendant's Rule 12(b)(6) motion to dismiss the plaintiff's section 1692e claim under the FDCPA. Id. at *5-6. As part of its discussion of the section1692e claim, the District Court noted that "[t]he Third Circuit has yet to expressly find the application of the least sophisticated consumer standard to be a matter of law under § 1692e." Id. at *10. "Nonetheless," the District Court commented, "other circuits have." Id. (citing Clomon v. Jackson, 988 F.2d 1314, 1318-20 (2d Cir. 1993); Swanson v. S. Ore. Credit Serv., Inc., 869 F.2d 1222, 1227 (9th Cir. 1988); Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1174-75 (11th Cir. 1985)). Additionally, "[m]ultiple courts in

[the Third Circuit] have done the same." Kryluk, 2014 U.S. Dist. LEXIS 164876, at *10 (citing Kaymark v. Bank of Am., N.A., 11 F. Supp. 3d 496, 512 (W.D. Pa. 2014); Smith v. Lyons, Doughty & Veldhuius, P.C., 2008 U.S. Dist. LEXIS 56725 (D.N.J. July 23, 2008); Womack v. Nat'l Action Fin. Servs., 2007 U.S. Dist. LEXIS 54206 (E.D. Pa. July 25, 2007)). The District Court went on to determine that "[c]onsistent with this wealth of jurisprudence, this Court agrees that application of the least sophisticated consumer standard to § 1692e is a question of law." Id.; see Szczurek v. Prof'l Mgmt., Inc., 59 F. Supp. 3d 721, 728 (E.D. Pa. 2014) ("The question of whether the least sophisticated debtor would be confused or misled by debt collector's notice is a question of law for us to decide."); Beard v. Ocwen Loan Servicing, LLC, 2015 U.S. Dist. LEXIS 128401, at *16-17 (M.D. Pa. Sept. 24, 2015) (Caldwell, J.) (citing Lesher v. Law Offices of Mitchell N. Kay, P.C., 724 F. Supp. 2d 503, 506 (M.D. Pa. 2010) (Smyser, M.J.)); Stuart v. Udren Law Offices P.C., 25 F. Supp. 3d 504, 511 (M.D. Pa. 2014) (Brann, J.) ("Furthermore, 'whether the least sophisticated debtor would be mislead by a particular communication is a question of law that may be resolved in a Rule 12(b)(6) motion.'") (quoting Smith, 2008 U.S. Dist. LEXIS 56725)).

The aforementioned cases support Plaintiff's contention that a determination concerning whether a communication subject to the FDCPA is

"false, deceptive, or misleading" from the perspective of the "least sophisticated

consumer" is a question of law.  As a result, Defendant's argument that Plaintiff's

motion for summary judgment should be denied because the present summary

judgment record, specifically whether the letter at issue constitutes a false or

misleading communication from the perspective of the "least sophisticated

consumer," presents a question of fact for the jury is without merit.  Therefore, the

Court will address whether Defendant violated the FDCPA as a question of law

and, thus, determine whether Plaintiff is entitled to summary judgment based upon

the undisputed factual record.

Initially, the Court notes that "[t]he FDCPA was enacted 'to eliminate

abusive debt collection practices by debt collectors.'"  Simon v. FIA Card Servs.

NA, 639 F. App'x 885, 888 (3d Cir. 2016) (quoting Kaymark v. Bank of Am., 783

F.3d 168, 174 (3d Cir. 2015)).  "As the FDCPA is an explicitly remedial statute . .

. 'we construe its language broadly, so as to effect is purpose."  Jensen, 791 F.3d

at 418 (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 453 (3d Cir. 2006)).

"Courts routinely employ a 'least sophisticated debtor' standard when deciding if

debt collection violates the FDCPA."  Id. (citing Rosenau v. Unifund Corp., 539

F.3d 218, 221 (3d Cir. 2008)).  "Although the least sophisticated debtor standard

is 'lower than the standard of a reasonable debtor,' it 'preserv[es] a quotient of

reasonableness and presum[es] a basic level of understanding and willingness to read with care.'" Jensen, 791 F.3d at 418 (alterations in original) (quoting Rosenau, 539 F.3d at 221). "In doing so, it 'give[s] effect to the Act's intent to "protect[] the gullible as well as the shrewd."'" Id. (alterations in original) (quoting Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 298 (3d Cir. 2008)).

The "least sophisticated debtor" standard "is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." Id. at 419 (emphasis in original) (citing Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 103 (1st Cir. 2014); Bentley v. Great Lakes Collection Bureau, 6 F.3d 60, 62 (2d Cir. 1993)). "Thus, the FDCPA enlists the efforts of sophisticated consumers . . . as "private attorneys general" to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.'" Id. (quoting Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008)). Notably, the "least sophisticated debtor" standard "is a low standard." Good v. Nationwide Credit, Inc., 55 F. supp. 3d 742, 747 (E.D. Pa. 2014).

Further, the Third Circuit "confirmed that the 'least sophisticated debtor'

analysis incorporates a requirement that a false statement be material in order to be actionable under the FDCPA." Simon, 639 F. App'x at 888. "As we observed, '[a] debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material.'" Id. (quoting Jensen, 791 F.3d at 421). As stated by the Third Circuit, "[a] statement is material 'if it is capable of influencing the decision of the least sophisticated debtor.'" Id. (quoting Jensen, 791 F.3d at 421).

As discussed above, Plaintiff is advancing a claim under section 1692e(10) of the FDCPA. (Doc. 1-1, p. 3). "In relevant part, the FDCPA provides that '[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" Simon, 639 F. App'x at 888 (alternation in original) (quoting 15 U.S.C. § 1692e). Section 1692e "contains a non-exhaustive list of conduct that violates § 1692e . . . ." Id. Relevant to this matter is section 1692e(10), which prohibits a "debt collector" from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

As established by the summary judgment record, it is undisputed that Plaintiff received a letter which stated, in relevant part, that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050 (P) and

related federal law." (Doc. 30, p. 1); (Doc. 30-1, p. 1); (Doc. 30-2, p. 1). The letter also stated that the "Amount of Debt" was "$798.67" and the "Settlement Amount" was for "$638.94." (Doc. 30-1, p. 1). As a result, the amount of savings had the offer been accepted would have been $159.73. (Id.). Additionally, the letter noted that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income pursuant to the Internal Revenue Code 6050(P) and related federal law." (Id.).

It is determined that the challenged language addressed above, which serves as the basis for Plaintiff's section1692e(10) claim, see (Doc. 1-1, p. 3); (Doc. 30-3), would be considered a "false representation or deceptive means to collect or attempt to collect any debt" by the "least sophisticated debtor." See Balon, 190 F. Supp. 3d at 393; see also Velez v. Enhanced Recovery Co., LLC, 2016 U.S. Dist. LEXIS 57832 (E.D. Pa. May 2, 2016); Good, 55 F. Supp. 3d at 748.

As a result, Plaintiff has established that no genuine issues of material fact remain as to any of the elements of the FDCPA claim she advances under section 1692e(10). Additionally, based on these undisputed facts, Plaintiff has established that she is entitled to summary judgment on her claim. As a result, Plaintiff's motion for summary judgment, (Doc. 29), will be granted. Therefore, judgment will be entered in Plaintiff's favor.

### III. <u>CONCLUSION</u>

Based on the foregoing, Defendant's motion to dismiss for lack of subject matter jurisdiction, (Doc. 27), and Plaintiff's motion to remand, (Doc. 33), will be denied.  Plaintiff's motion for summary judgment, (Doc. 29), will be granted.  As a result, the Clerk of Court will be directed to enter judgment in the amount of $1,000.00 in favor of Plaintiff and against Defendant.  Additionally, Plaintiff will be permitted to file a stipulation or motion for attorney's fees and costs on or before August 7, 2017.

A separate Order will be issued.

**Date**: August 28, 2017                    **/s/ William J. Nealon**
                                             **United States District Judge**